IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **APRIL J. BROCK,** | 3:18-CV-02012-BR |
| Plaintiff, | OPINION AND ORDER |
| v. | |
| **COPART OF WASHINGTON, INC.,** a foreign business corporation, and **JASON MUSANTE,** an individual, | |
| Defendants. | |

**CRAIG A. CRISPIN**
**ASHLEY A. MARTON**
Crispin Employment Lawyers
1834 S.W. 58th Avenue
Suite 200
Portland, OR 97221
(503) 293-5759

       Attorneys for Plaintiff

**JOHN A. BERG**
**BRADLEY J. KRUPICKA**
Littler Mendelson, PC
121 S.W. Morrison Street
Suite 900
Portland, OR 97204
(503) 221-0309

       Attorneys for Defendants

1 - OPINION AND ORDER

**BROWN, Senior Judge.**

This matter comes before the Court on Defendants' Motion (#7) to Compel Arbitration.  For the reasons that follow, the Court concludes the record is sufficiently developed for the Court to resolve Defendant's Motion without oral argument, **GRANTS** Defendants' Motion, and **DISMISSES** this matter **without prejudice.**

## BACKGROUND

The following facts are taken from the Complaint and the parties' filings related to Defendants' Motion to Compel Arbitration.

On August 14, 2001, Plaintiff applied for employment with Defendant Copart of Washington.

On August 27, 2001, Defendant hired Plaintiff as a customer-service representative.  On August 27, 2001, Plaintiff signed a document indicating that she had received, read, and agreed to be bound by the terms of Copart's Employee Handbook.  On that same day Plaintiff also signed an Arbitration Agreement that provided:

> I AGREE THAT ANY CONTROVERSY OR CLAIM ARISING OUT OF OR IN ANYWAY RELATING TO ANY ASPECT OF MY EMPLOYMENT WITH COPART, INCLUDING ALLEGED VIOLATIONS OF ANY STATE OR FEDERAL CIVIL RIGHTS LAWS, OR OTHER LAWS AND STATUTES (INCLUDING CLAIMS FOR EMPLOYMENT DISCRIMINATION AND HARASSMENT), OR EXPRESS OR IMPLIED TERM OF EMPLOYMENT SHALL BE SETTLED BY ARBITRATION IN THE COUNTY AND STATE OF THE COMPANY FACILITY WHERE I WAS EMPLOYED IN ACCORDANCE WITH THE RULES THEN IN EFFECT OF JUDICIAL ARBITRATION AND MEDIATION SERVICES (JAMS).

> THE ARBITRATOR MAY GRANT INJUNCTIVE OR OTHER RELIEF IN SUCH DISPUTE OR CONTINGENCY. THE DECISION OF THE ARBITRATOR SHALL BE FINAL, CONCLUSIVE AND BINDING ON THE PARTIES TO THE ARBITRATION. JUDGMENT MAY BE ENTERED ON THE ARBITRATOR'S DECISION IN ANY COURT HAVING JURISDICTION.
>
> THIS ARBITRATION CLAUSE CONSTITUTES A WAIVER OF EMPLOYEE'S RIGHT TO JURY TRIAL AND RELATES TO THE RESOLUTION OF ALL DISPUTES RELATED TO ALL ASPECTS OF THE EMPLOYER/EMPLOYEE RELATIONSHIP, INCLUDING BUT NOT LIMITED TO, THE FOLLOWING CLAIMS:
>
> i.  ANY AND ALL CLAIMS FOR WRONGFUL DISCHARGE OF EMPLOYMENT; BREACH OF CONTRACT, BOTH EXPRESSED AND IMPLIED; BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING, BOTH EXPRESSED AND IMPLIED; NEGLIGENT OR INTENTIONAL INTERFERENCE WITH CONTRACT OR PROSPECTIVE ECONOMIC ADVANTAGE; AND DEFAMATION;
>
> ii. ANY AND ALL CLAIMS FOR VIOLATION OF ANY FEDERAL, STATE, OR MUNICIPAL STATUTE, INCLUDING, BUT NOT LIMITED TO, TITLE VII OF THE CIVIL RIGHTS ACT OF 1964, THE CIVIL RIGHTS ACT OF 1991, THE AGE DISCRIMINATION IN EMPLOYMENT ACT OF 1967, THE AMERICANS WITH DISABILITIES ACT OF 1990, THE FAIR LABOR STANDARDS ACT, THE APPLICABLE STATE FAIR EMPLOYMENT AND/OR LABOR CODE.
>
> iii. ANY AND ALL CLAIMS ARISING OUT OF ANY OTHER LAWS AND REGULATIONS RELATING TO EMPLOYMENT OR EMPLOYMENT DISCRIMINATION.

Decl. of Christine Arnold, Ex. 2 at 1-2.

In 2006 Copart promoted Plaintiff to General Manager. Plaintiff "managed the operations of the auction yard, managed inventory and employee relations, prepared profit and loss reports, and was responsible for accounts payables, audit review, training and filling in for other positions as needed." Compl. at ¶ 12.

On August 7, 2015, Plaintiff was injured in a vehicle collision while traveling for business. After August 7, 2015, Plaintiff "was on an active workers' compensation claim and was on approved protected medical leave." Compl. at ¶ 13. After August 2015 Plaintiff had periodic medical appointments for therapy and treatment for her injuries that required her to leave 20-to-30 minutes before the end of her regularly scheduled shift.

In May 2016 Copart updated its Employee Handbook and amended the Arbitration Agreement to read as follows:

> Except as it otherwise provides, the Company and I mutually agree to the resolution by arbitration of all claims or controversies, past, present or future, including without limitation, claims arising out of or related to my application for employment, employment, and/or the termination of my employment that the Company may have against me or that I may have against the Company and/or
> . . . (2) Company's officers, directors, employees, or agents in their capacity as such or otherwise.
>
> * * *
>
> This Agreement is intended to be as broad as legally permissible under the Federal Arbitration Act and to apply to the resolution of disputes that otherwise would be resolved in a court of law or before a forum other than arbitration. Unless specifically excluded below, this Agreement applies, without limitation, to any claims based upon or related to discrimination, harassment, retaliation, defamation (including claims of post-employment defamation or retaliation), breach of a contract or covenant, fraud, negligence, personal injury, emotional distress, breach of fiduciary duty, trade secrets, unfair competition, overtime, wages or other compensation, breaks and rest periods, seating, termination, tort claims, equitable claims, and all statutory and common law

> claims. The Agreement covers, without limitation, all claims arising under Title VII of the Civil Rights Act of 1964, the Civil Rights Acts of 1866 and 1871, the Civil Rights Act of 1991, 42 U.S.C. § 1981, the Pregnancy Discrimination Act, the Americans With Disabilities Act, the Age Discrimination in Employment Act, the Family Medical Leave Act, the Fair Credit Repo1iing Act, the Fair Labor Standards Act, the Equal Pay Act, the Genetic Information Non-Discrimination Act, each as amended, any state or local statutes, if any, addressing the same or similar subjects, and any and all claims for violation of any federal, state or other governmental law, statute, regulation, or ordinance, except claims excluded in the section entitled "Claims Not Covered by the Agreement."
>
> Additionally, the Arbitrator, and not any federal, state, or local court or agency, shall have the exclusive authority to resolve any dispute relating to the interpretation, applicability, enforceability, or formation of this Agreement.

Arnold Decl., Ex. 5 at 1.

On June 21, 2016, at 11:49 a.m., Copart Human Resources Generalist Kallie Sirles emailed Plaintiff the updated Employee Handbook and Arbitration Agreement. At that time when an employee opened and accessed the Arbitration Agreement, the application instructed the employee to click on "radio buttons" and to "electronically sign" to indicate that the employee had read and agreed to the Arbitration Agreement. Arnold Decl. at ¶ 7. When an employee had accepted or declined all of the buttons directing the employee to sign, Copart's system generated an email attaching the electronically signed document to an email sent to both the employee and the human-resources representative

5 - OPINION AND ORDER

who had sent the document.  On June 21, 2016, at 12:57 p.m., Plaintiff used her unique email account to sign the Arbitration Agreement.

Plaintiff alleges in her Complaint that her schedule adjustments for therapy and medical treatment were accommodated until April or May 2017, which is when Defendant Jason Musante became her regional supervisor.  Plaintiff alleges Musante called her while she was in therapy, began to "excessively supervis[e] and . . . find minor errors in [Plaintiff's] performance," gave Plaintiff a substandard rating in an audit, withheld a bonus without explanation, and mocked Plaintiff in a meeting.

On November 6, 2017, Plaintiff complained via email to Copart's human-resources department about Musante's treatment.  Plaintiff also requested accommodation in the form of a modified work schedule.  Plaintiff alleges Copart did not respond to her email and denied her request for accommodation.

On December 4, 2017, Copart fired Plaintiff.

On November 20, 2018, Plaintiff filed a Complaint in this Court against Copart and Musante in which she alleges the following claims:  (1) against Copart for disability discrimination in violation of the Americans with Disabilities Act, 42 U.S.C. § 12112; (2) against both Defendants for disability discrimination in violation of Oregon Revised Statutes § 659A.112; (3) against both Defendants for retaliation for

whistleblowing in violation of Oregon Revised Statutes § 659A.199; (4) retaliation in violation of Oregon Revised Statutes § 659A.030(1)(f); (5) against both Defendants for violation of the Oregon Family Leave Act, Oregon Revised Statutes § 659A.183(2); (6) against both Defendants for discrimination for invoking the Oregon workers' compensation system in violation of Oregon Revised Statutes § 659A.040; and (7) against Copart for wrongful discharge.

On December 26, 2018, Defendants filed a Motion to Compel Arbitration in which they seek an order compelling arbitration of all of Plaintiff's claims and dismissing this matter. The Court took Defendants' Motion under advisement on January 23, 2019.

## **STANDARDS**

Congress enacted the Federal Arbitration Act (FAA), 9 U.S.C. § 1, *et seq.,* "in response to widespread judicial hostility to arbitration." *Am. Exp. Co. v. Italian Colors Restaurant*, 133 S. Ct. 2304, 2309 (2013). The FAA provides arbitration agreements generally "shall be valid, irrevocable, and enforceable." *Knutson v. Sirius XM Radio, Inc.,* 771 F.3d 559, 564 (9th Cir. 2014). *See also* 9 U.S.C. § 2.

> [C]ourts must rigorously enforce arbitration agreements according to their terms, including terms that specify with whom [the parties] choose to arbitrate their disputes and the rules under which that arbitration will be conducted. That holds true for claims that allege a violation of a

7 - OPINION AND ORDER

federal statute, unless the FAA's mandate has been overridden by a contrary congressional command.

*Am. Exp. Co.,* 133 S. Ct. at 2309 (quotations omitted).

"Under the FAA, the basic role for courts is to determine (1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue." *Knutson*, 771 F.3d at 564-65 (quotation omitted). "[A] district court may either stay the action or dismiss it outright when . . . the court determines . . . the claims raised in the action are subject to arbitration." *Johnmohammadi v. Bloomingdale's, Inc.*, 755 F.3d 1072, 1074 (9th Cir. 2014). *See also* 9 U.S.C. §§ 3, 4.

## **DISCUSSION**

As noted, Defendants seek an order compelling arbitration and dismissing this matter. Defendants assert both the 2001 and the 2016 Arbitration Agreement are valid and enforceable and that Plaintiff's claims are subject to either or both of those Agreements. Defendants also assert the 2016 Arbitration Agreement requires an arbitrator rather than a court to determine whether the Agreement is enforceable.

Plaintiff, in turn, asserts the Court should not enforce the 2016 Arbitration Agreement because it does not comply with the notice requirement of Oregon Revised Statutes § 36.620(5).

Plaintiff also contends the Court should not enforce either Arbitration Agreement because they are procedurally and/or substantively unconscionable.

## I. Oregon Revised Statutes § 36.620(5)

As noted, Plaintiff asserts the Court should not enforce the 2016 Arbitration Agreement because it does not comply with the notice requirement of Oregon Revised Statutes § 36.620(5).

Oregon Revised Statutes § 36.620(5) provides:

> (5) A written arbitration agreement entered into between an employer and employee and otherwise valid under subsection (1) of this section is voidable and may not be enforced by a court unless:
>
> > (a) At least 72 hours before the first day of the employee's employment, the employee has received notice in a written employment offer from the employer that an arbitration agreement is required as a condition of employment . . .; or
> >
> > (b) The arbitration agreement is entered into upon a subsequent bona fide advancement of the employee by the employer.

Defendants do not dispute Plaintiff did not receive the 2016 Arbitration Agreement 72 hours before the first day of her employment or that Plaintiff did not enter into "a subsequent bona fide advancement" at the time she signed the 2016 Arbitration Agreement. Nevertheless, Defendants point out that courts in Oregon have held the FAA preempts the notice requirements of § 36.620(5). According to Defendants, therefore, their failure to comply with § 36.620(5) does not negate the 2016

9 - OPINION AND ORDER

Arbitration Agreement.

In *Lumm v. CC Services, Incorporated*, the plaintiff brought an action against the defendants alleging various employment-discrimination claims. 290 Or. App. 39, 41 (2018). The defendants moved to compel arbitration based on an arbitration clause in the plaintiff's employment agreement. The plaintiff asserted the arbitration clause was unenforceable because the defendants failed to comply with § 36.620(5) and because the clause also was unconscionable. The defendants asserted the FAA preempts § 36.620(5) and asserted in any event the question of unconscionability was reserved for the arbitrator under the terms of the arbitration clause. The trial court denied the defendants' motion to compel arbitration, and the defendants appealed. On appeal the Oregon Court of Appeals concluded "the FAA preempts [§ 36.620(5),] and ORS 36.620(5)[, therefore,] provides no basis for invalidating the parties' arbitration agreement." *Id*., at 45. The court reasoned:

> [T]he United States Supreme Court has consistently held that the FAA preempts the enforcement of state statutes that erect barriers specific to arbitration provisions, including state laws that affect only a certain class of litigants or claims. *See, e.g., Perry v. Thomas*, 482 U.S. 483 (1987)(holding that the FAA preempts statute allowing actions for the collection of wages notwithstanding existence of an arbitration agreement); *Southland Corp. v. Keating*, 465 U.S. 1 (1984)(same, as to statute requiring judicial forum for claims under state Franchise Investment Law).

10 - OPINION AND ORDER

> Specifically, the FAA preempts state laws that create notice requirements that apply only to arbitration provisions, and not to contract provisions in general. *See Doctor's Associates, Inc. v. Casarotto*, 517 U.S. 681, 683 (1996). In *Doctor's Associates, Inc.*, the United States Supreme Court held that the FAA preempted a Montana statute that declared arbitration clauses unenforceable unless notice of the arbitration provision appeared on the first page of the contract in underlined, uppercase letters. The Court explained that the goals and policies of the FAA were "antithetical to threshold limitations placed specifically and solely on arbitration provisions." *Id*. at 688.
>
> Like the Montana statute in *Doctor's Associates, Inc.*, O.R.S. 36.620(5) purports to impose notice requirements "specifically and solely on arbitration provisions." 517 U.S. at 688. Accordingly, the FAA preempts that provision.

*Id.,* at 44-45. The Court finds the reasoning in *Lumm* to be persuasive and, accordingly, adopts it. Thus, the Court concludes the FAA preempts § 36.620(5), and, therefore, § 36.620(5) does not provide any basis to invalidate the 2016 Arbitration Agreement.

## II. The 2001 Arbitration Agreement

Although Plaintiff asserts in her Opposition that the Arbitration Agreements between the parties are unconscionable, the Court notes the circumstances that Plaintiff relies on to support her claim of procedural unconscionability and the terms that allegedly create substantive unconscionability are found only in the 2016 Arbitration Agreement. Plaintiff does not identify any procedural issues or substantive terms in the 2001

Arbitration Agreement that establish procedural and/or substantive unconscionability nor does the Court find any.

Accordingly, the Court concludes the 2001 Arbitration Agreement is not procedurally or substantively unconscionable, and, therefore, there is not any legal or equitable basis for the Court to decline to enforce the 2001 Arbitration Agreement.

The Court notes, however, that even though Plaintiff does not clearly state in her Opposition that the 2016 Arbitration Agreement supersedes the 2001 Arbitration Agreement, it appears Plaintiff may have intended to make that argument. The Court, therefore, addresses the parties' arguments as to the 2016 Arbitration Agreement.

### III. The 2016 Arbitration Agreement

As noted, Plaintiff asserts the Court should not enforce the 2016 Arbitration Agreement because it is procedurally and/or substantively unconscionable. Defendants, however, assert the issue of enforceability of the 2016 Arbitration Agreement is reserved to the arbitrator and, in any event, the 2016 Arbitration Agreement is not unconscionable.

**A. The issue of enforceability of the 2016 Arbitration Agreement is reserved to the arbitrator.**

Defendants assert the 2016 Arbitration Agreement requires the arbitrator to decide whether it is enforceable.

The Ninth Circuit has explained:

> Although gateway issues of arbitrability

> presumptively are reserved for the court, the
> parties may agree to delegate them to the
> arbitrator. The Supreme Court recently reaffirmed
> this principle in *Rent–A–Center, West, Inc. v.
> Jackson*, holding that courts must enforce the
> parties' "agreement to arbitrate threshold issues"
> regarding the arbitrability of their dispute, and
> may do so by . . . compelling arbitration under
> section 4 [of the FAA]." 561 U.S. 63 (2010).
>
> Because such issues would otherwise fall within
> the province of judicial review . . . the Supreme
> Court has cautioned that "[c]ourts should not
> assume that the parties agreed to arbitrate
> arbitrability unless there is 'clear and
> unmistakable' evidence that they did so." *First
> Options of Chicago, Inc.*, 514 U.S. at 944, 115 S.
> Ct. 1920 (*quoting AT & T Techs., Inc. v. Commc'ns
> Workers of Am.*, 475 U.S. 643, 649 (1986)
> (alterations omitted)).
>
> Accordingly, the question of arbitrability is left
> to the court unless the parties clearly and
> unmistakably provide otherwise. Such "[c]lear and
> unmistakable 'evidence' of agreement to arbitrate
> arbitrability might include . . . an express
> agreement to do so." *Rent–A–Center*, 130 S. Ct. at
> 2783 (Stevens, J., dissenting)(citing *First
> Options of Chicago, Inc.*, 514 U.S. at 946).

*Momot v. Mastro*, 652 F.3d 982, 987 (9th Cir. 2011)(citations omitted).

In *Momot* the parties entered into an arbitration agreement that contained the following provision:

> (a) Arbitration. If a dispute arises out of or
> relates to this Agreement, the relationships that
> result from this Agreement, the breach of this
> Agreement *or the validity or application of any of
> the provisions of this Section 4*, and, if the
> dispute cannot be settled through negotiation, the
> dispute shall be resolved exclusively by binding
> arbitration.

652 F.3d at 988 (emphasis in original). The Ninth Circuit

13 - OPINION AND ORDER

concluded the arbitration provision "clearly and unmistakably indicate[d] [the parties'] intent for the arbitrators to decide the threshold question" of the enforceability of the arbitration provision. *Id*.

Similarly, in *Mohamed v. Uber Technologies* the parties entered into two arbitration agreements that "delegated to the arbitrators the authority to decide issues relating to the 'enforceability, revocability or validity of the Arbitration Provision or any portion of the Arbitration Provision.'" 848 F.3d 1201, 1209 (9th Cir. 2016). The Ninth Circuit concluded "[t]his language is similar to but more expansive than the language at issue in *Momot*, and thus also 'clearly and unmistakably indicates [the parties'] intent for the arbitrators to decide the threshold question of arbitrability.'. . . The delegation provisions clearly and unmistakably delegated the question of arbitrability to the arbitrator for all claims." *Id*.

Here the 2016 Arbitration Agreement provides:

> [T]he Arbitrator, and not any federal, state, or local court or agency, shall have the exclusive authority to resolve any dispute relating to the interpretation, applicability, enforceability, or formation of this Agreement.

Arnold Decl., Ex. 5 at 1. The Court finds this language is broader than the language in *Momot* and as broad as the delegation provision in *Mohamad*. The Court, therefore, concludes the provision of the 2016 Arbitration Agreement clearly and

unmistakably delegates the question of the enforceability of the 2016 Arbitration Agreement to the arbitrator.

Accordingly, the Court is required to enforce the 2016 Arbitration Agreement "according to [its] terms and, in the absence of some other . . . contract defense [applicable to the delegation provision], such as . . . unconscionability, let an arbitrator determine arbitrability as to all [of Plaintiff's] claims." *Mohamed*, 848 F.3d at 1209. *See also Henry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S. Ct. 524, 529 (2019)("When the parties' contract delegates the arbitrability question to an arbitrator, a court may not override the contract.").

When a court has concluded an arbitration agreement clearly and unmistakably has delegated to the arbitrator the issue of the enforceability of the agreement, "[t]he only remaining question is whether the Delegation Clause itself is unconscionable." *Lakhan v. U.S. Sec. Assocs.*, No. CV 18-9659-MWF (GJSx), 2019 WL 175043, at *7 (C.D. Ca. Jan. 11, 2019)(citing *Brennan v. Opus Bank*, 796 F.3d 1125, 1132 (9th Cir. 2015)). Thus, the sole remaining question before this Court is whether the delegation clause in the 2016 Arbitration Agreement is unconscionable.

**B. The delegation provision of the 2016 Arbitration Agreement is not unconscionable.**

**1. Unconscionability Standards**

When grounds "exist at law or in equity for the

revocation of any contract," courts may decline to enforce arbitration agreements. 9 U.S.C. § 2. *Knutson*, 771 F.3d at 564. The Supreme Court has held "the savings clause preserves generally applicable contract defenses such as unconscionability, so long as the doctrines are not 'applied in a fashion that disfavors arbitration.'" *Kilgore v. KeyBank, Nat. Ass'n*, 673 F.3d 947, 963 (9th Cir. 2012)(quoting *AT&T Mobility LLC v. Conception*, 131 S. Ct. 1740, 1747 (2011)). These "contract-based challenges are governed by applicable state law." *Cox v. Ocean View Hotel Corp.*, 533 F.3d 1114, 1121 (9th Cir. 2008). Thus, the Court applies Oregon law to determine unconscionability.

Pursuant to Oregon law, a "party asserting unconscionability bears the burden of demonstrating that the arbitration clause in question is, in fact, unconscionable." *Livingston v. Metropolitan Pediatrics, LLC,* 234 Or. App. 137, 151 (2010)(citing *W.L. May Co., Inc. v. Philco-Ford Corp.*, 273 Or. 701, 707 (1975)). Whether a contract is unconscionable is a "question of law to be decided based on the facts in existence at the time the contract was made." *Livingston*, 234 Or. App. at 151.

"In Oregon, the test for unconscionability has both procedural and substantive components." *Id*. (citing *Vasquez-Lopez v. Beneficial Or., Inc.*, 210 Or. App. 553, 556 (2007)).

> Procedural unconscionability refers to the conditions of contract formation and involves a focus on two factors: oppression and surprise. Oppression exists when there is inequality in bargaining power between the parties, resulting in no real opportunity to negotiate the terms of the contract and the absence of meaningful choice. Surprise involves the question whether the allegedly unconscionable terms were hidden from the party seeking to avoid them.

*Livingston*, 234 Or. App. at 151. Substantive unconscionability, in turn, "generally refers to the terms of the contract, rather than the circumstances of formation, and the inquiry focuses on whether the substantive terms unfairly favor the party with greater bargaining power." *Id*.

### 2. Analysis

The only unconscionability argument that Plaintiff provides as to the delegation clause is "[c]ontesting an agreement to arbitrate in court is not something an employee would know to do without counsel.". Pl.'s Opp'n at 8. Plaintiff's argument, however, does not establish the procedural or substantive unconscionability of the delegation clause. For example, Plaintiff does not assert the delegation clause was hidden or vague nor that it consists of overly technical legal language. In addition, although Plaintiff does not have a post-secondary degree, the record reflects she worked for approximately ten years as a General Manager of Copart, which is the company's highest-ranking local employee. As General Manager

Plaintiff was responsible for orienting employees to company policy and for implementing and enforcing the policy as necessary. Under these circumstances the Court concludes the delegation provision is not unconscionable and, therefore, there is not any basis at law or in equity for the Court to decline to enforce it.

In summary, the Court has concluded the 2016 Arbitration Agreement clearly and unmistakably delegated to the arbitrator the issue of the enforceability of the agreement and that "the Delegation Clause itself is [not] unconscionable." *Lakhan*, 2019 WL 175043, at *7. Pursuant to the FAA, therefore, the Court must enforce the 2001 and/or 2016 Arbitration Agreements.

Accordingly, the Court grants Defendants' Motion to Compel Arbitration.

## CONCLUSION

For these reasons, the Court **GRANTS** Defendants' Motion (#7) to Compel Arbitration and **DISMISSES** this matter **without prejudice**.

IT IS SO ORDERED.

DATED this 27th day of February, 2019.

/s/
ANNA J. BROWN
United States Senior District Judge